UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

Hard Yaka LLC, et al.,

        Plaintiffs

v.

Hard Yaka Ventures GP,

        Defendant

Kevin Leiske, et al.,

        Intervening Defendants

Case No. 2:25-cv-00387-CDS-DJA

**Order Granting Intervening Defendants' Emergency Motion for an ex parte Temporary Restraining Order, Setting Briefing Schedule and Hearing**

[ECF No. 98]

      Intervening defendants Kevin Leiske, Brett Beldner, Margaret Slemmer, and Joseph Christopher Lewis filed an emergency motion for a temporary restraining order (TRO) to preserve the status quo of plaintiff Hard Yaka LLC's capital account in Hard Yaka Ventures LP. Mot., ECF No. 98. The emergency motion follows the October 25th notice of plaintiff Robert Gregory Kidd's request to withdraw Hard Yaka LLC's entire capital account in Hard Yaka Ventures LP, which he intends on doing without a majority-approval from the managers. The intervening defendants request a TRO preventing the plaintiffs from withdrawing the LLC's capital account in the LP—in whole or in part, directly or indirectly—and requiring them to restore any funds that are withdrawn. And they ask that the TRO stay in effect until it can bring a motion for preliminary equitable relief can be brought and have the court hear it pursuant to the standard briefing schedule. For the reasons stated herein, I grant the emergency motion and issue an ex parte TRO preventing the plaintiffs from withdrawing Hard Yaka LLC's capital account from the LP.

**I.    Background**

      Hard Yaka Ventures LP is an investment fund with one general partner and one limited partner. ECF No. 98 at 6. Its general partner, Hard Yaka Ventures GP, has exclusive managerial

authority. *Id.* The GP is managed exclusively by six managers; therefore, the LP is too. Of those six, one is Kidd, another is Jun Hirag (a nonparty in this case), and the other four are the intervening defendants. *Id.* Kidd is also the "indirect ultimate owner" of the LP's limited partner, Hard Yaka LLC. *Id.*

Kidd and Hard Yaka LLC filed suit against GP and its members for claims related to their operating agreements in Nevada state court.[1] That suit has since evolved into multi-jurisdictional litigation, reaching this court via a removal petition based on diversity jurisdiction. *See* Notice of removal, ECF No. 1; Notice of related cases, ECF No. 93; Notice of decision, ECF No. 96 (*Leiske v. Kidd*, Case No. 1:25-cv-00599-RGA (D. Del. Oct. 22, 2025)). Although there are presently three pending motions in this case, this order only resolves the intervening defendants' emergency motion for a temporary restraining order. *See* ECF No. 98.

The emergency motion for a TRO arises from notices sent by Kidd and his counsel to the intervening defendants and their counsel, respectively, via email on Friday, October 24th. *See* Ex. A, ECF No. 98-2 at 2–3 (letter from plaintiffs' counsel); *id.* at 4 (emails from Kidd and Hiraga). Kidd sent his email to the intervening defendants roughly one hour before the business day closed on Friday evening. ECF No. 98-2 at 4. That email reads as follows:

> On behalf of Hard Yaka LLC, I am reiterating my January 2025 request for withdrawal from Hard Yaka LLC's capital account in Hard Yaka Ventures LP. Hard Yaka LLC would like to withdraw all of its capital account, less $50M. Payment should be made in kind, effective 1/31/25.

*Id.* Within minutes, Hun Hiraga—the only GP manager who is not a party in the litigation—responded with one sentence: "Received and approved on behalf of the GP." *Id.*

Shortly after the close of business day on Friday evening, plaintiffs' counsel emailed a letter to the intervening defendants' counsel. *See* ECF No. 98-2 at 1. The letter informed the

---

[1] The claims include breach of fiduciary duties, breach of the implied covenant of good faith and fair dealing, fraud, rescission of the operating agreements for violation of the Investment Adviser Act, civil conspiracy, unjust enrichment, and a request for a declaratory judgment declaring the operating agreements and their arbitration clauses void. *See* Am. compl., ECF No. 21.

2

intervening defendants "as a courtesy, given the parties' ongoing dispute" of Kidd's recent request to withdraw on behalf of Hard Yaka LLC. ECF No. 98-2 at 3. The letter also says that the plaintiffs "vehemently dispute" the requirement under the parties' various agreements that a majority vote of the GP's managers is needed for the GP to consent to such a withdrawal. *Id.* It notes that this dispute is what "spark[ed] the ongoing litigation," then goes on to paraphrase something said during a deposition that it construes as disputing the majority-vote requirement. *Id.*

On Saturday, the intervening defendants emailed a response letter to the plaintiffs informing them that "the purported withdrawal was not authorized by the General Partner." Ex. B, ECF No. 98-3 at 4. The letter requested that the plaintiffs "immediately cease-and-desist with this unlawful withdrawal" or, at a minimum, refrain from effectuating the withdrawal while the preliminary injunctive relief is pending. *Id.* And they asked them to give written confirmation of agreement to either measure by October 25, 2025, at 11:59 p.m. *Id.* Otherwise, the intervening defendants would "have no choice but to file an Emergency Motion under Local Rule 7-4." *Id.*

The plaintiffs did not respond, so the intervening defendants promptly filed this emergency motion on October 26th. ECF No. 98 at 3–4.

## II.     Legal standard

### A.  Emergency motions under Local Rule 7-4.

"Emergency motions should be rare." LR 7-4(b). Procedurally, such motions must be titled "Emergency Motion" and paired with a declaration that sets forth three items: (1) the emergency's nature; (2) the parties' contact information; and (3) the movant's statement on meet-and-confer efforts and notice to affected parties. LR 7-4(a). Under the meet-and-confer prong of item three, the movant's statement must either certify that the movant "has been unable to resolve" the dispute extrajudicially after participating "in the meet-and-confer process," or describe in detail the emergency which precludes a meet and confer. As for the notice prong, the movant's statement must detail "when and how" the other affected parties

3

were "notified of the motion or, if not notified, why it was not practicable to do so." *Id.* Substantively, the "court may determine whether any matter submitted as an 'emergency' is, in fact, an emergency." LR 7-4(c). And it may deny an emergency motion that fails to comply with these procedural or substantive requirements. *Id.*

### B.  Motions for ex parte temporary restraining orders under FRCP 65(b).

For a court to issue an ex parte TRO, the movant must point to "specific facts" which "clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition." Fed. R. Civ. P. 65(b). The purpose of these orders is to preserve the status quo and to prevent irreparable harm "just so long as is necessary to hold a hearing, and no longer." *Granny Goose Foods, Inc. v. Bhd. of Teamsters*, 415 U.S. 423, 439 (1974). And they are only justified in an "extremely limited" set of circumstances. *Reno Air Racing Ass'n, Inc. v. McCord*, 452 F.3d 1126, 1131 (9th Cir. 2006). To determine whether such circumstances are present, courts apply the four *Winter* factors: (1) the likelihood of success on the merits; (2) the risk of irreparable harm; (3) the balance of equities; and (4) the interest of the public. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008) (citations omitted); *see also Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001) (noting that the analysis for temporary restraining orders and preliminary injunctions is "substantially identical").

## III.  Discussion

### A. The intervening defendants meet the emergency motion standard.

The intervening defendants' emergency motion meets the procedural and substantive requirements of Local Rule 7-4. Procedurally, the title of the motion and the declaration of Jonathan A. Patchen,[2] are consistent with LR 7-4(a). *See* Decl., ECF No, 198-1. Upon review of the declaration, I find that it sufficiently sets forth all three items required of LR 7-4(a)(1), (2), and (3). *See id.* at 2–3 (nature of the emergency); *id.* at 4 (contact information); *id.* at 3–4 (meet-and-confer efforts). With respect to item three, the intervening defendants' response letter

---

[2] Mr. Patch is counsel for the intervening defendants.

expressly notified the plaintiffs of the emergency motion and offered a meet and confer. ECF No. 98-3 at 4; ECF No. ECF No. 89-1 at 3. Although the parties did not meet and confer, the declaration describes in detail an emergency which precluded one from taking place. ECF No. 89-1 at 4. Therefore, the declaration satisfies both prongs of item three.

Substantively, I find that the matter submitted in the motion is, in fact, an emergency. The reasons for that are set forth below.

### B. The circumstances warrant an ex parte temporary restraining order.

To warrant an ex parte TRO, the intervening defendants must point to specific facts in an affidavit or verified complaint clearly showing that immediate and irreparable harm will occur before the plaintiffs can respond. *See* Fed. R. Civ. P. 65(b). I find that they succeeded in doing so, and that the *Winter* factors support their requested relief.

*First*, the intervening defendants show that they are likely to succeed on the merits. Their emergency motion seeks to enforce the express terms under the operating agreements—namely, those requiring a majority-vote for limited partner capital withdrawals—which Kidd signed. ECF No. 98 at 11–12. The plaintiffs' suit disputes the enforceability of those operating agreements based on how to how they were procured. *Id.* However, the law does not afford much grace to parties who seek to avoid contracts that they signed without reading. *See, e.g., Graham v. State Farm Mut. Auto. Ins. Co.*, 565 A.2d 908 (Del. 1989).[3] I find that the intervening defendants have, at least, a "fair chance of success on the merits" of this case. *Gilder v. PGA Tour, Inc.*, 936 F.2d 417, 424 (9th Cir. 1991).

*Second*, the defendants would suffer irreparable harm absent the TRO. Kidd has made his intention of making a sizeable withdrawal without majority-approval from the GP managers "vehemently" clear. And it would do so at the cost of the intervening defendants' express management rights set forth in the operating agreements and 90 percent of LP assets. That is irreparable harm.

---

[3] Delaware law controls the agreements in dispute. *See* ECF No. 1; ECF No. 2 (sealed).

1       *Third*, the balance of equities supports the TRO. The interconnectedness between the
2 parties and the multijurisdictional reach of their litigation webs together many interests.
3 Decisions that are entangled in this web risk harming those interests and, therefore, call for an
4 appropriate level of care. But here, the threatened withdrawal shows blatant disregard toward
5 the many interests at stake. The plaintiffs could have requested the withdrawal any time over
6 the last nine months, yet they chose to do so shortly before the business day closed on Friday.
7 After the close of business, they sent the letter that indicated their plan to side-step the
8 operating agreements to make the sizeable withdrawal. The assets requested to be withdrawn
9 are implicated in the intervening defendants' advancement action against the plaintiffs in
10 Delaware. And the operating agreements' enforceability is at the center of the action *pending* in
11 this court. I remind the plaintiffs that it is up to this court to deem the agreements
12 unenforceable; their letter to opposing counsel declaring them as so will not do.

13       *Fourth*, an ex parte temporary restraining order is in the public's interest. It will ensure
14 that the assets are not managed in a way that contravenes the contract. It will also promote
15 judicial economy, as the assets are implicated in the advancement action and the judgment of
16 this court.

## IV. Conclusion

18       IT IS HEREBY ORDERED that the intervening defendants' emergency motion for an ex
19 parte temporary restraining order **[ECF No. 98] is GRANTED**.

20       IT IS FURTHER ORDERED that defendants must file their motion for preliminary
21 injunction no later than Tuesday, November 4, 2025. The opposition to the motion is due
22 November 10, 2025, and any reply is due November 13, 2025, by 3:00 p.m.

23       IT IS FURTHER ORDERED that the parties must appear for a hearing on any motion for
24 a preliminary injunction on Friday, November 14, 2025, at 1:00 p.m. in LV Courtroom 6B.

25       Dated: October 31, 2025

                                                                          _____
                                                                          Cristina D. Silva
                                                                          United States District Judge