UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

| | |
|---|---|
| Hard Yaka LLC and Robert Gregory Kidd,<br><br>　　　　　　Plaintiffs<br><br>v.<br><br>Hard Yaka Ventures GP, LLC,<br><br>　　　　　　Defendant<br><br>Kevin Leiske et al.,<br><br>　　　　　　Intervening Defendants | Case No. 2:25-cv-00387-CDS-DJA<br><br>**Order Granting Intervening Defendants' Motion to Dismiss, Granting Intervening Defendants' Motion for Appropriate Relief, Denying Intervening Defendants' Motion for a Preliminary Injunction, and Denying Plaintiffs' Emergency Motion for a Hearing**<br><br>[ECF Nos. 48, 50, 100, 110] |

　　　　Plaintiffs Robert Gregory Kidd and Hard Yaka LLC bring this business litigation action against Hard Yaka Ventures GP and its Managers, intervening defendants Kevin Leiske, Brett Beldner, Margaret Slemmer, and Joseph Christopher Lewis. The intervening defendants filed a motion to dismiss and a motion for appropriate relief. Mot. dismiss, ECF No. 48; Mot. appr. relief, ECF No. 50. They contend that there is not a justiciable controversy between the plaintiffs and the GP, and that the plaintiffs fail to state a claim upon which relief can be granted. ECF No. 48. They also move for preliminary injunction. ECF No. 100. The plaintiffs move, on an emergency basis, for an evidentiary hearing on the intervening defendants' motion for a preliminary injunction. ECF No. 110. For the reasons stated herein, I grant the intervening defendants' motion to dismiss, and their motion for appropriate relief. But I deny as moot the intervening defendants' motion for a preliminary injunction and the plaintiffs' emergency motion for an evidentiary hearing.

I.  Background

Hard Yaka LLC is the sole limited partner of and investor in Hard Yaka Ventures LP (the "Fund"). Am. compl., ECF No. 21 at ¶¶ 3, 34.[1] Plaintiff Kidd indirectly owns Hard Yaka LLC and, in turn, is the indirect limited partner of and sole investor in the Fund. *Id.* Hard Yaka Ventures GP is the Fund's sole general partner. *See* ECF No. 2 at 100 (sealed). Kidd is the GP's managing member; the intervening defendants are four of the GP's five other Managers. *Id.* 44–45, 48. Together, they share exclusive managerial authority over the Fund. *Id.* at 100.

The parties' management of the fund is governed by the LP Agreement and the GP Agreement (collectively, the "operating agreements"). *See generally* GP Agreement, Ex. 1, ECF No. 2 at 44–78 (sealed); LP Agreement, Ex. 2, ECF No. 2 at 83–115 (sealed). However, Kidd's role as the GP's "Managing Member" gives him veto power over many of the GP's actions. *See* ECF No. 2 at 48, 59 (sealed). Under the GP agreement, a "majority vote" requires consent of the Managing Member and at least two other Managers. *Id.* at 59. The GP cannot take certain actions absent a majority vote. *Id.* at 60. Thus, Kidd has veto authority over those actions which demand a majority vote.

This voting scheme is largely disputed in the present action. Plaintiffs Kidd and Hard Yaka LLC initiated this Nevada suit against Hard Yaka Venture GP in state court after failing to obtain a majority approval to make a withdrawal from the Fund to support Kidd's business venture. *See* Compl., ECF No. 1-2. That business venture is a project to build a new form of dollars known as United States Bank Count (USBC). ECF No. 21 at ¶ 1.

After the plaintiffs filed this suit, the intervening defendants initiated arbitration against Kidd pursuant to the operating agreements' arbitration clauses. *See* ECF No. 2 at 76 (LP arbitration clause); *Id.* at 113–14 (GP arbitration clause). They have since agreed to stay arbitration and pursue their claims against Kidd in this action instead. ECF No. 48 at 4.

---

[1] Unless otherwise noted, the court only cites to the plaintiffs' amended complaint (ECF No. 21) to provide context to this action, not to indicate a finding of fact.

The intervening defendants removed the action to this federal district court based on diversity jurisdiction, the plaintiffs filed an amended complaint asserting eight causes of action for claims such as fraud and recission of the operating agreements. *See* Pet., ECF No. 1; ECF No. 21. The plaintiffs allege that the intervening defendants fraudulently induced Kidd into signing the operating agreements without properly apprising him of their contents or the fact that they do not align with his objectives. *See generally* ECF No. 21 at ¶¶ 79–150.

Now, the intervening defendants move to dismiss the amended complaint under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. ECF No. 48. That motion is fully briefed. *See* Resp., ECF No. 52; Reply, ECF No. 57. In support of that motion, the intervening defendants request judicial notice of the state court documents (ECF No. 1-2), the Investment Adviser Public Disclosure search results of "Robert Gregory Kidd" and "Hard Yaka," and the operating agreements. *See* Defs.' reqs. judicial notice, ECF Nos. 49, 58. Additionally, the intervening defendants filed a motion for appropriate relief to change the filing date of their motion to dismiss and request judicial notice to March 26, 2025. Mot. appr. relief, ECF No. 50. And they also move for preliminary injunction based on the temporary restraining order recently issued. *See* Mot. prelim. inj., ECF No. 100; Order, 99.

In support of their opposition to the intervening defendants' motion to dismiss, the plaintiffs request judicial notice of the intervening defendants' declarations, the arbitration order postponing the emergency relief hearing, the operating agreements' DocuSign summary, and the plaintiffs' filing in the Delaware advancement action. *See* Pls.' reqs. judicial notice, ECF Nos. 53, 80. The plaintiffs also move, on an emergency basis, for an evidentiary hearing on the intervening defendants' motion for a preliminary injunction. *See* Emerg. mot. hr'g, ECF No. 110.

II.   **Legal Standards**

    A.  **Dismissal for lack of subject-matter jurisdiction.**

Article III of the U.S. Constitution allows federal courts to adjudicate "cases" and "controversies." *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 160 (2016). The plaintiff bears the

burden of showing that a justiciable controversy is present. *Sopcak v. N. Mt. Helicopter Serv.*, 52 F.3d 817, 819 (9th Cir. 1995). A justiciable controversy is one that is "definite and concrete, touching the legal relations of parties having adverse legal interests." *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240–41 (1937). This is distinct "from a difference or dispute of a hypothetical or abstract character; from one that is academic or moot." *Id.* at 240.

A court must dismiss a case that it lacks subject-matter jurisdiction over. *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 506 (2006). A party may move to dismiss a case for lack of subject matter jurisdiction under Rule 12(b)(1) at any time during the case. *Id.*; *Wood v. City of San Diego*, 678 F.3d 1075, 1082 (9th Cir. 2012). If that jurisdictional challenge relies solely on the complaint's allegations, then the court's ruling on the challenge must do the same. *DaVinci Aircraft, Inc. v. United States*, 926 F.3d 1117, 1122 (9th Cir. 2019). That is, when ruling on a facial challenge to subject-matter jurisdiction, the court looks no further than the complaint's factual allegations—accepting them as true and construing them in the light most favorable to the plaintiff. *Id.*; *Husayn v. Mitchell*, 142 F.4th 667, 670 (9th Cir. 2025).

### B. Dismissal for failure to state a claim.

Rule 12(b)(6) calls for dismissal of a complaint that fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). In most cases, a complaint will not be dismissed under Rule 12(b)(6) if its factual allegations, taken as true and construed in the light most favorable to the nonmoving party, "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also* Fed. R. Civ. P. 8(a)(2). But if the complaint alleges fraud, then it must meet Rule 9(b)'s heightened pleading standard to avoid dismissal. *See In re Cloudera, Inc.*, 121 F.4th 1180, 1186 (9th Cir. 2024). Rule 9(b)'s standard requires the complaint to "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). The allegations must identify "the who, what, when, where, and how of the misconduct charged." *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 964 (9th Cir. 2018) (citation omitted).

4

When ruling on a 12(b)(6) motion, the court may consider the complaint's contents, "matters properly subject to judicial notice," and "evidence on which the complaint 'necessarily relies.'" *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010) (quotation omitted). And it need not accept as true allegations that contradict such matters of judicial notice or evidence on which the complaint necessarily relies. *Id.* A complaint "necessarily relies" on evidence if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion." *Id.* A matter is "properly subject to judicial notice" when it either is "generally known within the trial court's territorial jurisdiction" or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). As such, courts may take judicial notice of other judicial proceedings and related court records. *See Rosales-Martinez v. Palmer*, 753 F.3d 890, 894 (9th Cir. 2014); *United States ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992).

If the court dismisses a complaint for failure to state a claim, then it should also allow leave to amend unless an amendment clearly cannot cure the complaint's deficiencies. *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992). Rule 15(a) instructs the court to "freely" give leave to amend "when justice so requires." Fed. R. Civ. P. 15(a). Reasons to not grant leave to amend include the leave's "undue delay," the movant's "bad faith or dilatory motive," the previous amendments' "repeated failure to cure deficiencies," the opposing party's undue prejudice "by virtue of allowance of the amendment," and the amendment's "futility." *Forman v. Davis*, 371 U.S. 178, 183 (1962).

III.    **Discussion**

The intervening defendants move to dismiss the complaint under Rule 12(b)(6) for failure to state a claim upon which relief can be granted. They also move to dismiss the suit against the GP under Rule 12(b)(1) for lack of subject-matter jurisdiction. I agree on both fronts.

At the outset, I take judicial notice of the present versions GP agreement (Ex. 1, ECF No. 2 at 44–78 (sealed)) and the LP agreement (Ex. 2, ECF No. 2 at 83–115 (sealed)) because they are part of the state court records. *See Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006); *Borneo*, 971 F.2d at 248. However, I deny the intervening defendants' request for judicial notice of the older versions of the operating agreements (ECF No. 58) because they are not relevant to this dispute. Additionally, I grant the plaintiffs' request for judicial notice of the DocuSign summary of the operating agreements' signatures because they can be accurately and readily determined by sources whose accuracy cannot reasonably be questioned. *See* ECF No. 53; Fed. R. Evid. 201(b). But I note that, contrary to the Exhibit G's title, the DocuSign data shows that the LP agreement was signed by all parties on November 6, 2023. *See* LP Agreement DocuSign Certificate, Ex. G, ECF No. 54-7. Conversely, Exhibit F accurately describes the DocuSign data for the GP agreement as being completely signed on October 26, 2023. *See* GP Agreement DocuSign Certificate, Ex. F, ECF No. 53-6.

### A. The suit against GP is dismissed pursuant to Rule 12(b)(1) for lack of subject-matter jurisdiction.

There is no justiciable controversy between the plaintiffs. Plaintiff Hard Yaka LLC is "indirectly and wholly owned by Kidd." ECF No. 21 at ¶ 34. Kidd also has controlling authority over the GP by way of his veto power as the GP's "Managing Member." *See* GP Agreement, Ex. 1, ECF No. 2 at 48, 59 (sealed). Under the GP agreement, a "majority vote" requires consent of the Managing Member and at least two other Managers. *Id.* at 59. The GP cannot take certain actions, such as participating in litigation, absent a majority vote. *Id.* at 60. Thus, Kidd has veto power over the GP's ability to defend itself in this suit. Kidd may never consent to the GP defending itself in the suit, allowing the plaintiffs to seek default and obtain judgments that contravene the GP agreement and harm the interests of the other Managers.

Because Kidd controls both sides of the litigation, there is not a justiciable controversy between the plaintiffs and the GP. *See Ellis v. Dyson*, 421 U.S. 426, 434 (1975) ("[I]t is elemental that there must be parties before there is a case or controversy."); *Gould v. Control Laser Corp.*, 866

F.2d 1391, 1393 (Fed. Cir. 1989); *E. Tennessee, V. & G. R. v. S. Tel. Co.*, 125 U.S. 695, 696 (1888). Therefore, this court lacks subject-matter jurisdiction over the suit between the plaintiffs and the GP. Because an amendment would be futile, I dismiss the first, second, fifth, and eighth causes of action against the GP with prejudice pursuant to Rule 12(b)(1).

### B. The claims against the intervening defendants are dismissed pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted.

The plaintiffs' third, fourth, fifth, sixth, seventh, and eighth causes of action fail to state a claim upon which relief can be granted.

#### 1. Claim Three: Breach of Fiduciary Duty

The third claim is for "breach of fiduciary duty." ECF No. 21 at 25. In the plaintiffs' opposition, they assert that Kidd is owed duties of care and loyalty. ECF No. 52 at 6 (citing *Culverhouse v. Paulson & Co.*, 133 A.3d 195, 198–99 (Del. 2016)). This is because Kidd is the Fund's sole indirect investor through [Hard Yaka LLC], which is the sole limited partner in the Fund." ECF No. 21 at ¶ 3.

The parties dispute whether the intervening defendants owe fiduciary duties to the plaintiffs. Because it's alleged in the amended complaint, I assume that they do for purposes of the motion to dismiss.[2] *See* Fed. R. Civ. P. 12(b)(6); *see also* Del. Code Ann. tit. 6, § 18-1104; *Auriga*

---

[2]  The plaintiffs mischaracterize *Culverhouse*. In *Culverhouse*, the court ruled that "the Investment Fund Managers owe fiduciary duties to the investors who invested directly in the Investment Fund" to the "extent not waived by the terms of the agreements specific to each fund." 133 A.3d at 198–99. There, the defendants were general partners and managers of the Investment Fund; the plaintiff was a member and investor of the Feeder Fund, and in turn, an indirect investor in the Investment Fund. *Id.* at 196–97. Because the plaintiff did not "invest directly in the Investment Fund," the court held that the defendants did not owe—let alone breach—a fiduciary duty to it. *Id.* The plaintiff would instead have to "look to the Feeder Fund and his contractual or fiduciary relationship with it and its managers, not the Investment Fund Managers, to address any dissatisfaction with investment losses by the Investment Fund." *Id.* at 199–200.

   Here, Kidd is an *indirect* investor of the Fund through the Fund's limited partner, Hard Yaka LLC. So *Culverhouse* actually hurts their contention that the intervening defendants owe Kidd duties of loyalty and care because he is the sole indirect investor in the Fund. Under *Culverhouse*, Kidd lacks the direct investor status necessary to give rise to those duties. Therefore, he would have to look to Hard Yaka LLC—not the intervening defendants as Managers—to address any dissatisfaction with the Fund's management.

*Cap. Corp. v. Gatz Props.*, 40 A.3d 839, 851 (Del. Ch. 2012), *aff'd*, 59 A.3d 1206 (Del. 2012) (holding that Managers owe default duties of loyalty and care to the other Managers and fiduciaries of the LLC, which can be contractually waived). Thus, the question is whether the complaint plausibly alleges that the intervening defendants breached fiduciary duties to the plaintiffs that were owed, not contractually waived. I find that it fails to do so.

The amended complaint states that the intervening defendants breached their fiduciary duties to the plaintiffs by "acting against interests of" the plaintiffs. ECF No. 21 at ¶ 97. One way in which they allegedly did so was by drafting the operating agreements to purportedly take advantage of the plaintiffs, and then failing to "properly apprise" the plaintiffs of the agreements' contents. *Id.* But there are no allegations showing how the agreements took advantage of the plaintiffs or why the onus for apprising their contents fell on the intervening defendants. *Cf. Scion Breckenridge Managing Member, LLC v. ASB Allegiance Real Est. Fund*, 68 A.3d 665, 680 (Del. 2013) (noting that parties are responsible for the contracts they sign, even if unaware of the terms); *Graham v. State Farm Mut. Auto. Ins. Co.*, 565 A.2d 908, 913 (Del. 1989) (holding that a party's failure to read a contract does not justify its avoidance). These allegations are, at best, "buyer's remorse" for the agreement the plaintiffs accepted—or in the alternative, a grievance with the intervening defendants' decision to disagree with the plaintiff. Either way, this allegation is insufficient to demonstrate a breach of fiduciary duty.

Another, albeit similar, way in which the intervening defendants allegedly "acted against the plaintiffs' interests" is by "refusing to follow [their] directives, including refusing to release funds invested by" the plaintiffs into the LP. ECF No. 21 at ¶ 97. But the LP agreement expressly allows the intervening defendants as Managers of the GP to withhold consent to such withdrawals "for any reason or no reason at all." ECF No. 2 at 340. So even if they had a fiduciary duty to approve the withdrawal, the agreement waived it. *Gatz Props., LLC v. Auriga Cap. Corp.*, 59 A.3d 1206, 1218 (Del. 2012). The other allegations as to the intervening defendants seeking to extort Kidd and subvert efforts to launch the USBC similarly fail to give rise to a plausible claim

for relief for breach of fiduciary duty. Because an opportunity to amend has been given yet proved futile, I dismiss the third cause of action with prejudice pursuant to Rule 12(b)(6).

### 2. Claim Four: Fraud

The plaintiffs' fraud claim fails to meet the heightened pleading standard of Rule 9(b). *See* ECF No. 21 at ¶¶ 103–09. A claim for fraud requires the plaintiff to show: (1) the defendant's false representation; (2) the defendant's knowledge, belief, or disregard for its falsity; (3) the defendant's intent to induce the plaintiff to act or refrain from acting; (4) the plaintiff's actual reliance; and (5) the plaintiff's damages. *Stephenson v. Capano Dev., Inc.*, 462 A.2d 1069, 1074 (Del. 1983).

Here, the plaintiffs allege that the intervening defendants made materially false misrepresentations or omissions to the plaintiffs by failing to disclose that the operating agreements they drafted "did not comply with Kidd's directives, were unlawful, and purported to provide" them with "authority to tie up Kidd's indirectly invested money" in perpetuity. ECF No. 21 at ¶ 104. Yet again, these allegations are grievances with the intervening defendants' management decisions; they do not allege what false misrepresentations were made or why they were material. Stated otherwise, the plaintiffs fail to show the *what* and the *how* requirements of Rule 9(b)'s pleading standard and fraud's prima facie elements. Because an opportunity to amend has been given yet proved futile, I dismiss the fourth cause of action with prejudice pursuant to Rule 12(b)(6).

### 3. Claim Five: Rescission of the GP and/or LP Agreements for Violation of the Investment Advisers Act (IAA).

The plaintiffs' IAA claim for rescission under 15 U.S.C. § 80b-15 is time-barred. ECF No. 21 at 28. The statute of limitations for "an IAA action for rescission is either one year from the wrong or one year from the discovery/three years from the wrong." *Kahn v. Kohlberg, Kravis, Roberts & Co.*, 970 F.2d 1030, 1039 (2d Cir. 1992). The date of discovery is "when the plaintiff obtains

actual knowledge of the facts giving rise to the action or notice of the facts, which in the exercise of reasonable diligence, would have led to actual knowledge." *Id.* at 1042.

Here, the intervening defendants argue that the statute of limitations for the IAA claim started tolling on January 1, 2023. *See* ECF No. 48 at 21–22. The plaintiffs disagree and point to *Hsu v. UBS Financial Services, Inc.*, 2011 WL 3443942 (N.D. Cal. Aug. 5, 2011), to argue that the Sarbanes-Oxley (SOX) Act's two-year statute of limitations period applies to their IAA claim instead of *Kahn*'s one- and three-year period. *See* ECF No. 52 at 25–30; ECF No. 64 at 4–7. But they misinterpret that case. In *Hsu*, the district court held that the SOX Act's two-year statute of limitation applies to a "fraud-based Section 80b-6 claim," whereas a "Section 80b-15 claim is limited by the one- and three-year *Kahn* periods." 2011 WL 3443942, at *5. Thus, contrary to the plaintiffs' contention, *Hsu* instructs that the *Kahn* periods apply here because the plaintiffs' IAA claim is based on a Section 80b-15 violation. *See* ECF No. 21 at ¶ 118.

In this case, the plaintiffs' IAA claim is barred by the one- and three-year statute of limitations set forth in *Kahn*. The DocuSign data shows that the GP agreement and the LP agreement were completely signed in October 2023 and November 2023, respectively. *See* ECF Nos. 53-6, 53-7. Regardless of whether the intervening defendants' proposed date or the DocuSign effective dates are used, the claim is barred because 2023—the year that the wrong occurred and should have reasonably been discovered—is over a year before the IAA was asserted on March 12, 2025. *See* ECF No. 21. Because the fifth cause of action for recission under the IAA is time-barred, I dismiss it with prejudice pursuant to Rule 12(b)(6).

### 4. *Claim Six: Civil Conspiracy*

The plaintiffs fail to state a claim for civil conspiracy upon which relief can be granted. ECF No. 21 at 29. "The elements for civil conspiracy under Delaware law are: (1) a confederation or combination of two or more persons; (2) an unlawful act done in furtherance of the conspiracy; and (3) actual damage." *AeroGlobal Cap. Mgmt., LLC v. Cirrus Indus., Inc.*, 871 A.2d 428, 437 n.8 (Del. 2005). "Civil conspiracy is not an independent cause of action; it must be

predicated on an underlying wrong." *Kuroda v. SPJS Holdings, L.L.C.*, 971 A.2d 872, 892 (Del. Ch. 2009).

Here, the plaintiffs fail to state with particularity the underlying wrong. Their civil conspiracy claim is based on their intervening defendants' alleged fraud. ECF No. 21 at ¶¶ 121–30. But because their fraud claim fails to meet the heightened pleading standard of Rule 9(b), their civil conspiracy claim is precluded. That is, without showing that the intervening defendants acted unlawfully—such as by committing fraud—the plaintiffs' civil conspiracy claim crumbles. Because amendment would be futile, I dismiss the sixth cause of action with prejudice pursuant to Rule 12(b)(6).

### 5. Claim Seven: Unjust Enrichment

The plaintiffs seventh cause of action for unjust enrichment fails to state a claim upon which relief can be granted. ECF No. 21 at 31. In Delaware, "[t]he elements of unjust enrichment are: (1) an enrichment, (2) an impoverishment, (3) a relation between the enrichment and impoverishment, (4) the absence of justification, and (5) the absence of a remedy provided by law." *Nemec v. Shrader*, 991 A.2d 1120, 1130 (Del. 2010). "A claim for unjust enrichment is not available if there is a contract that governs the relationship between parties that gives rise to the unjust enrichment claim. *Kuroda*, 971 A.2d at 891.

Here, the operating agreements—i.e., contracts—govern the parties. Though the plaintiffs dispute the enforceability of those agreements, they fail to assert a plausible claim for relief with this court. Thus, the operating agreements control and another amendment of the complaint would be futile. I therefore dismiss with prejudice the seventh cause of action for unjust enrichment pursuant to Rule 12(b)(6).

### 6. Claim Eight: Declaratory Judgment

The plaintiffs' eighth cause of action for declaratory judgment fails to state a claim upon which relief can be granted. ECF No. 21 at 31–33. Upon examining the arbitration clause in the GP Agreement and LP Agreement, I find that the scope of those clauses and the enforceability of

those contracts is a question for the arbitrator. *See Trascent Mgt. Consulting, LLC v. Bouri*, 152 A.3d 108, 113 n.21 (Del. 2016); *SBC Interactive, Inc. v. Corp. Media Partners*, 714 A.2d 758, 761 (Del. 1998) ("Any doubt as to arbitrability is to be resolved in favor of arbitration."); *Carlyle Inv. Mgmt. L.L.C. v. Nat'l Indus. Grp. (Holding)*, 2012 WL 4847089, at *10 (Del. Ch. Oct. 11, 2012), *aff'd*, 67 A.3d 373 (Del. 2013) ("Under Delaware and federal law, a party cannot escape a valid forum selection clause, or its analogue, an arbitration clause, by arguing that the underlying contract was fraudulently induced or invalid for some reason unrelated to the forum selection or arbitration clause itself."). Therefore, I dismiss the eighth cause of action without prejudice and instruct the plaintiffs to pursue arbitration to resolve their claims as to the operating agreements' enforceability and the intervening defendants' liability.

## IV.    Conclusion

IT IS HEREBY ORDERED that the intervening defendants' motion to dismiss **[ECF No. 48]** and motion for appropriate relief **[ECF No. 50] are GRANTED.**

IT IS FURTHER ORDERED that the parties must submit the eighth cause of action to arbitration as set forth in the operating agreements.

IT IS FURTHER ORDERED that, in light of this dismissal, the intervening defendants' motion for preliminary injunction **[ECF No. 100]** and the plaintiffs' emergency motion **[ECF No. 110] are DENIED as moot.** The previously scheduled hearing on the motion for preliminary injunction [*see* ECF No. 99] is hereby **VACATED**.

The Clerk of Court is kindly instructed to enter judgment accordingly, and to close this case.

Dated: November 13, 2025

_____
Cristina D. Silva
United States District Judge